UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| INDUSTRIAL HIGHWAY CORPORATION, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:18-CV-485-JVB-JEM |
| ) | |
| GARY CHICAGO INTERNATIONAL ) | |
| AIRPORT AUTHORITY and THE CITY OF ) | |
| GARY INDIANA, ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant's, Gary Chicago International Airport Authority, Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 19], filed February 25, 2019, and Defendant's, City of Gary, Motion to Dismiss [DE 24], filed March 12, 2019. Plaintiff filed a response to Defendant Gary Chicago International Airport Authority's ("GCIAA") motion on March 11, 2019, and GCIAA replied on March 18, 2019. Plaintiff filed a response to the City of Gary's (the "City") motion on March 26, 2019, and the City did not file a reply. For the reasons described below, the motions are granted as to Count III of the Complaint, but denied as to Counts I and II.

## BACKGROUND

Plaintiff's Complaint alleges as follows: Plaintiff owns a parcel of 19.74 acres of land near the Gary International Airport. Defendants GCIAA and the City are trying to expand the Airport, and Plaintiff's property "fits prominently" into the expansion plan.[1] Between 2013 and 2018, Plaintiff reached four separate agreements to sell the land to other entities. In each case, the prospective buyers backed out after Defendants "interfered" by dissuading them from purchasing

---

[1] GCIAA has statutory authority to operate and manage the Airport, including the right to acquire property for the Airport's use. *See* Ind. Code § 8-22-3-11(7). Plaintiff alleges that the City has a "controlling interest" in GCIAA.

the property. Plaintiff alleges that Defendants are dissuading buyers to artificially deflate the market value of the property, so they can eventually buy it from Plaintiff at a lower price.

Most recently, in May 2018, Plaintiff reached an agreement to sell the property to Arka Express, Inc. ("Arka") for $1,687,500. Arka terminated the agreement on May 31, 2018, after Defendants allegedly "dissuaded Arka from purchasing the Real Estate by informing it governmental approvals necessary to conduct business on the Real Estate are or will be denied and the Real Estate is subject to condemnation proceedings." On November 13, 2018, Defendants, seeking to buy the property, provided Plaintiff with an appraisal valuing the property at $900,000, which assumed "no reported options, agreements or sale contracts pending." Plaintiff now sues alleging that Defendants' actions constitute an unconstitutional taking of its property; that it was denied due process because Defendants failed to follow Indiana's statutory procedures for exercising the power of eminent domain; and that Defendants committed tortious interference with contract by dissuading Arka from buying the property. Defendants move to dismiss the Complaint, arguing that the alleged actions do not amount to an unconstitutional taking or tortious interference with contract.

## ANALYSIS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on the motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that

the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570).

### A.    Count I

Defendants argue that the actions alleged do not amount to an unconstitutional taking of Plaintiff's property. Article 1, Section 21 of the Indiana Constitution provides: "No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." The Fifth Amendment to the U.S. Constitution provides: "[N]or shall private property be taken for public use, without just compensation." The Fifth Amendment's Takings Clause applies to the states via the Due Process Clause of the Fourteenth Amendment. *See State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009). The state and federal takings clauses are textually indistinguishable and are to be analyzed identically. *Id.*

Several types of government action can result in a compensable taking. The classic taking "requiring just compensation is a direct governmental appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005). The government's exercise of eminent domain is likewise a taking. *Kimco of Evansville*, 902 N.E.2d at 210-11. In addition, "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle*, 544 U.S. at 537. Established examples of these "regulatory takings" include a permanent physical invasion of the property or a deprivation of all or substantially all economic use of the property. *Id.*; *Biddle v. BAA Indianapolis, LLC*, 860

3

N.E.2d 570, 577 (Ind. 2007). The Supreme Court has held that there is no "set formula" for what constitutes a regulatory taking, but factors to be considered include the economic impact of the regulation, whether the regulation resulted in a "physical invasion" of the property, and the investment-backed expectations of the owner. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123-24 (1978).

Here, there is no allegation of a direct appropriation or physical invasion of the property. Plaintiff essentially alleges that Defendants are refusing to permit commercial uses for the property, having dissuaded several potential buyers over a five-year period. Assuming all facts and reasonable inferences as pled, Defendants have substantially limited Plaintiff's ability to sell the property or derive economic use from the land. Whether Defendants' alleged refusal to endorse commercial uses constitutes a taking is an "essentially ad hoc, factual inquir[y]" as to whether the economic loss from those actions should be borne by Plaintiff or the public as a whole. *Penn Cent.*, 438 U.S. at 123-24; *see also Bradley v. Eagle-Union Cmty. Sch. Corp. Bd. of Sch. Trustees*, 647 N.E.2d 672, 675 (Ind. Ct. App. 1995) ("Whether a particular interference is substantial is a question of fact for the fact-finder."). Based on the facts alleged, Plaintiff has stated a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.

Defendants identify several perceived flaws with Plaintiff's claim. First, they note Plaintiff's admissions that it still owns the property and that Defendants made an offer to buy it. In the City's view, the fact that "compensation has been offered outside of condemnation proceedings [means] no taking has occurred yet, if ever." This does not preclude a finding that Plaintiff has suffered a taking requiring just compensation. Defendants misread the holding in *Burkhart Advertising, Inc. v. City of Fort Wayne*, 918 N.E.2d 628 (Ind. Ct. App. 2009), which they cite for the premise that a taking requires direct appropriation or physical invasion. In *Burkhart*,

4

the plaintiff argued that it suffered a taking of advertising space it had leased from a property owner. 918 N.E.2d at 630. The property owner submitted a plan to further develop the property, which local government approved, conditioned on the removal of the advertising billboard due to zoning requirements. *Id*. The court found that no taking occurred because the developer terminated the lease, and therefore the plaintiff had no compensable interest in the advertising space that was allegedly taken. *Id*. at 634. That holding is not applicable to this case, because there is no dispute that Plaintiff owns the property in question.

Next, Defendants point out that the Complaint largely fails to distinguish between governmental entities. The Complaint alleges that Defendant GCIAA "operates the Indiana airport," while Defendant City of Gary "maintains a controlling interest by statute and ordinance" over GCIAA. The Complaint refers to Defendants collectively as "the Authority," and ascribes most of the actions alleged to "the Authority." Defendants argue that the City and the GCIAA are separate entities, and the City argues that claims against it should be dismissed because the "combining of the actions and/or knowledge of these separate entities is not supported by the facts alleged." Defendants may disagree with allegations made against them collectively, but that is irrelevant to whether those allegations, accepted as true, state a claim against both Defendants. As pled, the Complaint ascribes the relevant actions to both entities, and therefore states a claim against both.

The City also argues that Plaintiff's claim should be dismissed as unripe because Plaintiff did not attempt to use Indiana's procedures for inverse condemnation[2] or appealing land-use decisions before seeking relief in federal court. The City cites cases stemming from *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), which held

---

[2] Indiana Code § 32-24-1-16 allows the owner of a property acquired for public use to bring a suit for inverse condemnation to recover money damages.

that a Fifth Amendment claim is not ripe until the regulating authority has made a "final decision" and the landowner has exhausted the state's own procedures for seeking just compensation. However, the Supreme Court overruled that holding in *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). In *Knick*, the Court clarified that "because a taking without compensation violates the self-executing Fifth Amendment at the time of the taking, the property owner can bring a federal suit at that time," without having to exhaust state procedures. 139 S. Ct. at 2170-72. Therefore, Plaintiff's claim can proceed in federal court.

### B.     Count II

In Count II, Plaintiff argues that Defendants denied it due process by failing to follow Indiana's prescribed procedures for eminent domain. Indiana Code § 32-24-1-3 provides that "any person that may exercise the power of eminent domain for any public use . . . may exercise the power only in the manner provided" by the statute. The fact that Defendants did not initiate condemnation or eminent domain proceedings would not excuse their obligation to abide by the statute, if their actions amount to a taking. *See Util. Ctr., Inc. v. City of Fort Wayne*, 985 N.E.2d 731, 733 (Ind. 2013) ("Exercise of the delegated power [of eminent domain] consists of two aspects: 1) a specific legislative grant of authority; and 2) a method of procedure, prescribed by the legislature, whereby the authority must be exercised so as to protect the rights of property owners.") (citations omitted). The statute requires that the government, before exercising the power of eminent domain, "make an effort to purchase" the property. Ind. Code § 32-24-1-3(b). The government must provide "an appraisal or other evidence" to establish the proposed purchase price, and conduct "good faith negotiations" with the owner. *Id.*, § 32-24-1-3(c). Plaintiff argues that Defendants failed to engage in good faith negotiations.

Indiana courts have previously held that an offer based on an independent appraisal, which the government's offer apparently was, is a good faith offer as a matter of law.[3] *See Wagler v. W. Boggs Sewer Dist., Inc.*, 898 N.E.2d 815, 819 (Ind. 2008); *Lake Cty. Parks & Recreation Bd. v. Indiana-Am. Water Co.*, 812 N.E.2d 1118, 1124 (Ind. Ct. App. 2004). However, those cases applied a previous version of the eminent domain statute, which required only an "effort to purchase the land" in the form of a good faith offer. *Wagler*, 898 N.E.2d at 819 (holding that a good faith offer, presented on the appropriate form, satisfied the government's obligation under the prior statute). The separate requirement to conduct "good faith negotiations" came into effect in 2006. *See* 2006 Ind. Legis. Serv. P.L. 163-2006 (H.E.A. 1010) (West); *see also Wagler*, 898 N.E.2d at 819, n.2 (discussing the "additional elements" imposed by the amended statute). No court has held that the presentation of an independent appraisal, on its own, satisfies the additional requirement to engage in good faith negotiations.

In this case, Plaintiff alleges that Defendants attempted to "drive down" the price of the property by (1) dissuading interested buyers by informing them that it would not permit their proposed use, and (2) presenting a "patently inaccurate" appraisal valuing the property at $900,000, which presumed "no reported options, agreements or sale contracts pending," six months after Arka had agreed to pay $1,687,500 for it. The failure of the appraisal to account for Arka's offer, by itself, does not demonstrate bad faith. *See Wagler*, 898 N.E.2d at 820 ("[T]he failure to consider certain factors in the valuation of property does not render an appraisal invalid as not being in good faith.") (citing *Oxendine v. Pub. Serv. Co. of Ind.*, 423 N.E.2d 612, 619-620 (Ind. Ct. App. 1980)). However, the allegation that Defendants dissuaded interested buyers to drive down the "market price" is an allegation of bad faith. *See Lake Cty. Parks & Recreation Bd. v.*

---

[3] Plaintiff does not allege that the appraisal was not "independent."

7

*Indiana-Am. Water Co.*, 812 N.E.2d 1118, 1124 (Ind. Ct. App. 2004) (a good faith offer is "based on the fair market value of the property") (citing *Burd Mgmt., LLC v. State of Ind.*, 805 N.E.2d 1274, 1279 (Ind. Ct. App. 2004)). Because Plaintiff's allegations state a claim that Defendants denied it due process by failing to follow Indiana's eminent domain procedures, Count II of the Complaint also survives.

### C.     Count III

Defendants seek to dismiss Count III of the Complaint, in which Plaintiff alleges that Defendants committed tortious interference with contract by inducing Arka to terminate its agreement to buy the property from Plaintiff. "A plaintiff alleging tortious interference with a contractual relationship must establish five elements: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach." *Guinn v. Applied Composites Eng'g, Inc.*, 994 N.E.2d 1256, 1267 (Ind. Ct. App. 2013) (citations omitted).

Among other arguments, Defendants state that Plaintiff failed to show "absence of justification." Absence of justification exists when "the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another." *Bragg v. City of Muncie*, 930 N.E.2d 1144, 1147-48 (Ind. Ct. App. 2010) (citing *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 156–57 (Ind. Ct. App. 2005)). The Court can consider factors such as the nature of the defendant's conduct and motives, society's interest in protecting freedom of contract, and the remoteness of the defendant's conduct to the interference. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994).

In this case, Plaintiff alleges that Defendants induced Arka to terminate the agreement "by informing Arka [that necessary] governmental approvals necessary to conduct business . . . will be denied and the Real Estate is subject to condemnation proceedings," intending to "remove potential buyers of the Real Estate from the marketplace and in so doing, drive the price down." However, there is no allegation that injury to Plaintiff was the exclusive purpose of Defendants' communications with Arka. The Complaint acknowledges that Defendants did intend to acquire and use the property; the property "fits prominently" into their plan for the Airport. Defendants' alleged communication with Arka – informing Arka that its proposed use would not be approved, and that condemnation could be imminent – advanced that legitimate purpose. Because the allegedly unjustified conduct was not "exclusively directed" toward injuring Plaintiff, it cannot support a claim for tortious interference with contract. *Bilimoria*, 829 N.E.2d at 131; *see also Chem-A-Co. v. Earth Sci. Labs., Inc., No. 4:04CV0015 AS*, 2006 WL 2682385, at *3 (N.D. Ind. Sept. 18, 2006) (listing cases). Accordingly, this claim must be dismissed.

## CONCLUSION

For the reasons described above, the Court hereby **GRANTS in part and DENIES in part** Gary Chicago International Airport Authority, Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 19] and Defendant's, City of Gary, Motion to Dismiss [DE 24]. The Court **DISMISSES** Count III (Tortious Interference With Contract) as to both Defendants. Counts I and II remain pending.

SO ORDERED on October 16, 2020.

                                              s/ Joseph S. Van Bokkelen
                                              JOSEPH S. VAN BOKKELEN, JUDGE
                                              UNITED STATES DISTRICT COURT